UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No. 0:22-cv-61638-WPD

---

CONDOMINIUM ASSOCIATION OF
PARKER PLAZA ESTATES, INC.,

      Plaintiff,

v.

PAVEL MOREFF and SIMON
SHERMAN,

      Defendants.

---

## FIRST AMENDED COMPLAINT

Plaintiff, Condominium Association of Parker Plaza Estates, Inc. ("Parker Plaza" or "Association"), by and through undersigned counsel, submits its First Amended Complaint against Defendants, Pavel Moreff ("Moreff") and Simon Sherman ("Sherman"), (together "Defendants"), as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This action asserts claims arising under the Lanham Act, 15 U.S.C. § 1051 et seq. Therefore, this Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

2.    Parker Plaza is a Florida non-profit corporation with its primary place of business at 2030 South Ocean Drive, Hallandale, Florida 33009 in Broward County and is otherwise sui juris.

3.      Moreff is an individual over 18 years of age, who resides at 2030 South Ocean Drive, Hallandale, Florida 33009 in Broward County, and is otherwise sui juris.

4.      Sherman is an individual over 18 years of age, who resides at 2030 South Ocean Drive, Hallandale, Florida 33009 in Broward County, and is otherwise sui juris.

5.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because both the Association and Defendants reside in this District.

## **GENERAL ALLEGATIONS**

6.      Since January 2020, Sherman and Moreff, under the guise of made-up groups named "Initiative Group of Owners and Residents" ("IGOR") and "Freedom for Parker Plaza Association" ("FREEDOM4PPA"), have led an ongoing deliberate smear and harassment campaign against Parker Plaza, its current Board of Directors ("BOD"), and other members of the Association, in a willful attempt to illegally steal control of the Association and to prevent or delay necessary maintenance and repairs of the building by subterfuge, resulting in a continued and substantial disturbance of the use and quiet enjoyment of the condominium members' property.

7.      Defendants have repeatedly failed to obtain legitimate support from the Association's membership. Sherman was voted out as a board member in January 2020. Moreff, more recently in February 2022, lost an election bid to become board member. These losses apparently fueled the Defendants' unscrupulous and defamatory smear campaign against the Association and the BOD.

8.      In fact, Defendants' continuous unfounded disparagement against the Association and its BOD are directly motivated by Defendants' intent to seize control improperly of the Association.

9.      Defendants seek to seize the BOD's authority through harassment tactics which purposefully sabotage the BOD's ability to perform its duties which include performing the necessary maintenance and improvements required to maintain the Parker Plaza Condominium as safe and habitable.

10.     Defendants' most recent attempt to gain control of the Association unlawfully has been an attempt to recall the BOD by trickery, falsehoods, harassment, and coercion of the other members of the Association. In fact, not only are Defendants improperly soliciting members at their home thresholds in direct violation of the Association's governance documents, but Defendants are coercing members into signing the recall petition either by flat-out lying to the members about the BOD or engaging in threatening and stalking conduct resulting in imposing intimidation and fear on the members. Through this coercion, Defendants are preventing the members' use and enjoyment of the common elements of the building to which they are entitled. At the same time, Defendants maintained their attempted recall secret by surreptitiously failing to send the recall petition to anyone they felt may vote against it, in an effort to have the recall approved before the BOD becomes the wiser.

11.     Defendants have further abused the rights of elder members of the condominium by slipping recall petitions which Defendants had already filled-out in favor of the recall and demanding that elder members sign the petition without reviewing the already filled-out petition.

12.     To gain control of the condominium, Defendants have disseminated continuous and intentional false information and lies about Parker Plaza and its BOD to Parker Plaza's members in pamphlets, emails, social media posts, and letters, as well as orally, including by confrontation and harassment. In fact, Defendants have disseminated numerous disparaging emails about the

3

Association, its BOD, and several other resident owners making lurid untrue accusations of theft, criminal mismanagement and corruption.

13.     More recently, in support of their attempt to replace the BOD with their cronies, in addition to further regurgitation of the false accusations of theft, mismanagement, and corruption against the BOD and other members of the Association, which they know to be untrue, Defendants disseminated false information about the contractors that the BOD is considering to hire for the necessary renovations and maintenance to the building by accusing the contractors of being inexperienced and incapable of doing the required work. Likewise, Defendants, in yet another attempt to incite fear, distrust and anguish in the Association's members, have falsely claimed that due to the repairs to the pool deck the residents will be unable to use the pool for 2.5 years or more, when there is no such plan. (*See, e.g.*, Facebook Post from FREEDOM4PPA dated November 7, 2022, and Facebook Posts from Sherman dated January 14, 2022 (reposted recently) and October 31, 2022 attached hereto as Composite Exhibit "A").

14.     Defendants' written and oral statements are not opinions protected under free speech as said statements are based on patently false or inaccurate facts.

15.     Sherman has disseminated false information about Parker Plaza and its BOD, in part through IGOR, by using the email address pploudspeaker@gmail.com with a display name identifier as PARKER PLAZA in a willful attempt to mislead and confuse Parker Plaza's members and non-members to indicate falsely that the information originates from Parker Plaza management. Sherman further disseminated this false information to interfere with Parker Plaza's services in commerce with its members, as the emails from IGOR appear to be sent by and received

4

from Parker Plaza management and its BOD. (*See, e.g.*, email from <Parker Plaza> pploudspeaker@gmail.com dated November 30, 2020 attached hereto as Exhibit "B").

16.     The use of the display name identifier of PARKER PLAZA is a clear disregard to the Association's and its legitimate BOD's authority. Since being voted off of the BOD, Sherman has never been authorized by the BOD to send any communications to the members or non-members on behalf of the Association or its BOD. Sherman's continued use of PARKER PLAZA as an identifier is an egregious infringement of the trademark rights of the BOD.

17.     In fact, Parker Plaza and its BOD have exclusively identified its business and services to the members with PARKER PLAZA for all condominium business matters, including in all official communications and its website, since at least its incorporation in 1970.

18.     Defendants, as members of Parker Plaza, and certainly Sherman as a former member of the BOD, are aware of the long-used name of PARKER PLAZA for official emails from Parker Plaza and its BOD.

19.     Sherman's willful trademark infringement and false designation of origin prove his efforts to mislead and confuse Parker Plaza's members and non-members by using the display name PARKER PLAZA to make it appear as if the communications were coming from the BOD or the Association.

20.     This improper use of the PARKER PLAZA display name damages the hard-earned goodwill of the Association and the BOD and interferes with the Association's ability to provide services in commerce to its members.

21.     To further create the illusion of the Association's malfeasance and to gain control of the Association, Defendants raised funds from members through a "GoFundMe" account to hire

forensic detectives and accountants, South Florida Property Owners Consulting, LLC ("SFPOC") and C & G Financial Group ("C&G"), to perform a forensic investigation of the Association management specifically to find criminal misconduct and theft by the BOD. (*See* email from <Parker Plaza> pploudspeaker@gmail.com dated July 18, 2020 attached hereto as Exhibit "C").

22.     In furtherance of Defendants' slanderous campaign, the "GoFundMe" page, which is still active today, continues to refer to the Association and its BOD as "evil." (*See* "GoFundMe" page attached hereto as Exhibit "D").

23.     While SFPOC and C&G were still investigating the Association and its BOD, prior to the issuance of a final report of their findings and conclusions, Defendants continued disseminating blatantly false information about the Association and its BOD as if SFPOC had already made findings of malfeasance, which it had not, and never did. (*See, e.g.,* emails from <Parker Plaza> pploudspeaker@gmail.com dated November 30, 2020, December 8, 2020, February 2, 2021, and March 23, 2021 attached hereto as Composite Exhibit "E").

24.     In fact, in an email dated November 30, 2020, before the report by SFPOC and C&G issued, Defendants falsely claimed that: "IGOR has ***strong evidence*** that many hundred thousand dollars were already mismanaged in 2019-2020 FY on poorly controlled repairing of many apartments, including repairing and remodeling of several apartments of members of the Board and their friends on [sic] the cost of our Association." (*See* Composite Exhibit "E," email dated November 30, 2020) (emphasis added).

25.     Likewise, in a separate defamatory email dated March 23, 2021 to the condo members, Defendants fraudulently claimed that their consulting and accounting companies had already found multiple irregularities in the management of funds, including regulatory violations,

by the Association and its BOD. All of these statements were deliberate, egregious untruths, and intentional fabrications, which they knew to be false, **since in December, 2020 the Defendants had already received a presentation from the auditors that the Association had done nothing improper.** (*See* Composite Exhibit "E," email dated March 23, 2021).

26.    Contrary to Defendants' accusations, in July 2021, SFPOC provided its final report ("Final Report") which concluded that there was no criminal activity and no regulatory violations by the Association or its BOD, whatsoever. (*See* Final Report by South Florida Property Owners Consulting, LLC dated July 2, 2021 attached hereto as Exhibit "F"). Indeed, the auditors found none of the hysterical misconduct Defendants claimed.

27.    The Final Report stated in part:

> The Zoom participants were also advised that C&G Financial Group, basing their analysis on the documents provided for the Association's finances, and no indication was evident of a crime or regulatory violation having occurred to this point.
>
> …
>
> SFPOC's investigation revealed no indication of criminal activity, which could be brought to law enforcement for criminal prosecution. No suggestion of Association BOD members regulatory violations was noted, which could be presented to the DBPR. SFPOC conducted a thorough review of all documents provided and followed all investigative leads available in the matter.

*See* Exhibit "F," page 3, 6.

28.    In fact, as evidence of Defendants' intentional, wrongful misconduct, the Final Report states that in December 2020, in a Zoom call in which Defendants were present, Defendants were specifically informed that C&G had found no indication of a crime or regulatory violation having occurred to this point. (*See* Exhibit "F", page 3). Regardless, Defendants continued

7

disseminating their defamatory emails to the members and non-members about the Association and its BOD, claiming the auditors had found wrongful conduct, when they had not. (*See* Composite Exhibit "E").

29.     As evidence of actual malice and more egregious conduct, once the Final Report of Defendants' auditors failed to find any mismanagement or regulatory violations, whatsoever, Defendants buried the Final Report from the other Association's members. Even more egregiously, Defendants further hid the Final Report exonerating the Association and its BOD from the other members of the Association who had innocently donated money through the "GoFundMe" page. So the funders of the audit where themselves defrauded by Defendants.

30.     Even after the Final Report concluding that the Association and its BOD had not engaged in any criminal activity or regulatory violation, Defendants continued, and still continue, to disparage the Association and its BOD by emails and letters and oral statements. (*See, e.g.,* emails from <Parker Plaza> pploudspeaker@gmail.com dated August 13, 23, and 30, 2021, and November 14, 2021, and emails from <Freedom PPA> freedom4ppa@gmail.com dated August 19 and 29, 2022 attached hereto as Composite Exhibit "G", and Composite Exhibit "A"). Defendants continue to make false accusations in furtherance of their attempts to usurp the BOD's authority, including sabotaging necessary maintenance and repairs to the building.

31.     Defendants continued and incessant disparagement even after the Final Report was issued, and Defendants could no longer reasonably argue that it was merely their opinion or that they did not know better, further demonstrates Defendants' continuous malicious and intentional misconduct aimed purposefully at undermining the Association and the BOD's ability to perform its duties. (*See* Composite Exhibit "G").

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

32.     In pursuit of its fiduciary duties, and in spite of Defendants' wrongful interference, the BOD finally obtained a loan to address the dire needs of renovation and maintenance to the building as recommended by professional engineers and contractors hired by Parker Plaza needed to correct the neglect by previous boards which included Sherman.

33.     To thwart the BOD's ability to obtain the much-needed loan, Defendants circumvented the BOD and contacted banks directly, by emails and orally, disparaged the Association and its BOD, provided the banks false and misleading information regarding the condition of the building, in a deliberate attempt to have the banks reject the Association's loan applications. (*See, e.g.,* email from <Freedom PPA> freedom4ppa@gmail.com dated July 10, 2022 attached hereto as Exhibit "H").

34.     Defendants' actions delayed the BOD in obtaining the loan, and caused an increase in the costs of financing.

35.     Defendants' actions to discredit and defame the BOD have interfered, and will continue to interfere, unless Defendants are stopped from disrupting the legitimate business decisions; posing a clear and present danger to the Association and its residents.

36.     To date, Defendants' intimidation tactics, fabrications and lies about mismanagement and corruption have delayed the BOD from taking the proper and much required actions, including but not limited to, maintenance and repairs to the building's structural integrity.

37.     As Defendants are well aware, it is of utmost importance to properly maintain a condominium building to prevent a future incident as what occurred at Champlain Towers South in Surfside, Florida, but Defendants continue with their disruptive conduct with complete disregard for the Association members' and non-members' safety and financial abilities.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

38.    Defendants have also specifically falsely accused BOD member, Michael Fagan, of wrongdoing including false accusations of criminal mismanagement and corruption. (*See*, *e.g.*, emails from <Parker Plaza> parkerplazacomplaints@gmail.com dated December 7, 2020, February 10, 2021, and January 12, 2022 attached hereto as Composite Exhibit "I").

39.    In addition, even though the Association has a strict "no solicitation" policy (*See* Article XIV, Section C.5 of the Declaration of Condominium attached as Exhibit "J"), Defendants have ignored the policy and continue to ignore it with their disruptive, unwarranted behavior towards the BOD and other members of the Association that refuse to be part of Defendants' group.

40.    In violation of the Association's governing documents, Defendants continue to solicit and harass the Association's membership, city officials, and non-members such as tenants, realtors, employees and other professionals with in-person harassment, solicitation, threats of violence, and by stuffing their email inboxes with emails from <Parker Plaza> pploudspeaker@gmail.com and FREEDOM4PPA@gmail.com. Defendants continue to spread lies, confusion, misinformation, and fear within the Association community and elsewhere, including during board election period. (*See, e.g.,* email from ssherm@unmc.edu dated May 18, 2020 attached hereto as Exhibit "K" and Pictures of Sherman's repeated solicitations attached hereto as Composite Exhibit "L").

41.    Most recently, Defendants have attempted to recall the BOD by means of falsehoods and harassment of the members of the Association.

42.    Defendants have further solicited other members to engage in the same malicious and disruptive conduct. For example, Defendants requested Association member Anna Incledon, by email, to publish a post under the auspices of IGOR against the Association and its BOD replete

10

with falsehoods and misrepresentations, including the false claims that the BOD members misused the Association's funds to benefit themselves, knowing these statements to be untrue. (*See* email from anna@inkyenterprises.com dated January 8, 2022 attached hereto as Exhibit "M").

43.     In fact, even though disproved by their own auditor, in the email from IGOR to Ms. Incledon, Defendants explicitly continue to claim the truth of lies already uncovered and discredited:

> For instance, nearly $1,000,000 from that Assessment were spend on repairing of individual apartments without approval of the Board. Particularly striking is the fact that the Secretary of the Board, Mr. Fagan, has used more than $30,000 from the Assessment budget on repairing his apartments. Analogously, Mr. Leibovich [Jeff Leibowitz] (Director of the Board), who one year ago purchased additional apartment "as is," used more than $29,000 from our Assessment budget on repairing that apartment, as well. Mr. Landau (the Vice President of the Board) used $12,000 for repairing his apartment from the Assessment budget.

*See* Exhibit "M".

44.     Not only do these communications disparage the Association and its BOD, and cause confusion, angst, and anger among the Association's members and non-members, but the emails have been so abusive that some Association's members have stopped reading all emails related to Parker Plaza altogether, including legitimate emails from the Association and its BOD pertaining to important condominium services.

45.     Defendants' disruptive conduct has thus impeded and continues to impede the Association's membership and residents from receiving relevant and important information being provided by the legitimate and duly elected BOD of Parker Plaza.

46.     Even more appalling, the BOD and the Association's management agents, as well as the members of the Association who refuse to join in the Defendants' malfeasance, are being

subjected to continuous harassment and threatened with violence by Defendants and their agents who form part of IGOR and Freedom4PPA.

47.    Recently, a member of Defendant IGOR's and Freedom4PPA's groups posted in a Facebook page created by Sherman that the BOD be lynched.

48.    Ian Les Senzon posted on Defendants' unauthorized "Parker Plaza Owners" FaceBook page: "Let's find these people from yesteryear and ***hang them from our balconies***. And thank goodness we have enough balconies ***to hang the Infidel's*** (**sic**) ***from***." (*See* Post by Ian Les Senzon on Facebook page "Parker Plaza Owners" attached hereto as Exhibit "N") (emphasis added). Thus, Defendants have successfully incited violence against the BOD through their wrongful conduct and rhetoric.

49.    As a result of Defendants' actions including violent behavior and threats, the members of the Association are in fear for their personal safety and are prevented from the use and quiet enjoyment of their property as they fear using the common elements of the building.

50.    Defendants' malicious and disruptive acts further include inundating the Association and its management agents with frivolous requests for information in the last two years.

51.    These frivolous requests are cumbersome and a nuisance to the Association and its BOD, forcing the BOD to exert valuable resources including, but not limited to, extended time by the Association's staff, its BOD, and in some cases its attorneys, and incurring expenses to cover the costs of fulfilling these frivolous requests.

Fowler White Burnett P.A. • Brickell Arch, 1395 Brickell Avenue, 14th Floor, Miami, Florida 33131 • (305) 789-9200

52.     All in all, in what seems to be a coordinated attack on multiple fronts, Defendants' intentional and malicious conduct has interfered with the Association's and BOD's relationship and business with the Association's members and non-members, such as banks and contractors.

53.     In fact, Defendants' behavior has purposefully prevented the Association and its BOD from performing its duties and services and, in fact, delayed the approval of loans required to perform the necessary maintenance and repairs to the building.

54.     Likewise, Defendants' conduct has prevented the Association and its BOD from performing its duties as Defendants' emails and lies about the Association and the BOD require the Association and the BOD to invest significant time addressing the members and non-members to expend resources to clarify facts and reveal Defendants' falsehoods.

55.     In addition, Defendants' conduct has effectively disparaged and defamed the Association and its BOD by causing distrust, concern, and wariness in the Parker Plaza community as well as substantial emotional distress to the Association and its BOD.

56.     All conditions precedent to the filing of this action have been satisfied, waived, excused, or performance would be futile.

<u>**COUNT I:**</u>
**FALSE DESIGNATION OF ORIGIN**
**(LANHAM ACT, 15 U.S.C. § 1125(a))**
*(Against Sherman)*

57.     The Association realleges paragraphs one (1) through fifty-six (56), as if fully set forth herein.

58.     The unregistered trademark PARKER PLAZA is protected as a common law trademark by virtue of the Association's longtime use of the mark to identify itself in the marketplace.

59.     As noted above, the display name PARKER PLAZA used by Defendant Sherman is identical to and confusingly similar to the PARKER PLAZA trademark.

60.     Sherman's use of the PARKER PLAZA display name falsely indicates to consumers and members that Sherman's communications come from the same source as the Association's services and communications. Such implications are false, confusing to consumers and members, and material to consumers and members' decisions.

61.     Sherman's unauthorized use of the PARKER PLAZA display name, in connection with, and to interfere with, the Association's services in commerce to and with its members, falsely suggests that these services, or interference thereof, are provided by connected with, sponsored by, affiliated with, or related to, the Association.

62.     Sherman's unauthorized use of the PARKER PLAZA display name constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

63.     As a direct and proximate result of Sherman's wrongful conduct, the Association has been, is now, and will be irreparably injured and damaged by Sherman aforementioned acts, and unless Sherman is enjoined by the Court, the Association will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which the Association has no adequate remedy at law.

64.     By reason of the foregoing, the Association is entitled to permanent injunctive relief against Sherman, restraining him and all those in active concert and participation with Sherman from any further acts of false designation of origin, and for all remedies available to it under 15 U.S.C. § 1117, including recovery of any damages (to the extent calculable) proven to have been

14

caused by reason of Sherman's aforesaid acts, recovery of attorney's fees and costs, among other remedies as outlined below.

**WHEREFORE**, the Association respectfully requests that this Court enter a judgment against Sherman for False Designation Of Origin under the Lanham Act, 15 U.S.C. § 1125(a), enter a permanent injunctive relief against Sherman, restraining him and all those in active concert and participation with Sherman from any further acts of false designation of origin, and for all remedies available to it under 15 U.S.C. § 1117, including recovery of any damages (to the extent calculable) proven to have been caused by reason of the Sherman's aforesaid acts, attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), and all other relief deemed just and proper.

<u>COUNT II:</u>
<u>INFRINGEMENT OF UNREGISTERED TRADEMARKS</u>
**(LANHAM ACT, 15 U.S.C. § 1125(a))**
*(Against Sherman)*

65.     The Association repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs one (1) through sixty four (64) of this Complaint with the same force and effect as if herein again set forth in full.

66.     The Association has prior trademark rights over the PARKER PLAZA Mark by virtue of its public use of the Mark in interstate commerce directed to potential members and through its services to the members, including services through its website.

67.     The PARKER PLAZA Mark is valid, subsisting, used in commerce and inherently distinctive. It has also acquired secondary meaning in the marketplace.

68.     Sherman's use of the display name PARKER PLAZA in the emails from IGOR is identical to and confusingly similar to the Mark.

15

69.     Sherman's use of the display name PARKER PLAZA, identical to the Plaintiff's Mark, is likely to cause confusion or mistake with the Association's Mark. Members and potential members likely will believe that the Association's goods and services are provided by, sponsored by, associated with, or otherwise affiliated with Sherman because of Sherman's use of the display name PARKER PLAZA.

70.     Sherman knew that his use of the PARKER PLAZA Mark is likely to cause confusion or mistake as to the Association's sponsorship of, association with, or affiliation with Sherman.

71.     Sherman's continued use of the PARKER PLAZA display name is likely to cause irreparable injury to the Association's PARKER PLAZA Mark, reputation, and goodwill. The extent of this harm cannot be quantified, and therefore leaves the Association with no adequate remedy at law.

72.     Sherman's use of the PARKER PLAZA display name constitutes infringement of the PARKER PLAZA Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73.     By reason of the foregoing, the Association is entitled to permanent injunctive relief against Sherman, restraining him and all those in active concert and participation with Sherman from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including recovery of any damages (to the extent calculable) proven to have been caused by reason of Sherman's aforesaid acts, recovery of attorney's fees and costs, among other remedies as outlined below.

**WHEREFORE**, the Association respectfully requests that this Court enter a judgment against Sherman for Infringement Of Unregistered Trademark under the Lanham Act, 15 U.S.C.

Fowler White Burnett P.A. • Brickell Arch, 1395 Brickell Avenue, 14th Floor, Miami, Florida 33131 • (305) 789-9200

§ 1125(a), enter a permanent injunctive relief against Sherman, restraining him and all those in active concert and participation with Sherman from any further acts of false designation of origin, and for all remedies available to it under 15 U.S.C. § 1117, including recovery of any damages (to the extent calculable) proven to have been caused by reason of the Defendants' aforesaid acts, attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), and all other relief deemed just and proper.

**COUNT III:**
**PRIVATE NUISANCE**
*(Against Defendants)*

74. The Association realleges paragraphs one (1) through fifty-six (56), as if fully set forth herein.

75. Pursuant to Florida law and the Association's Declaration of Condominium, the Association's members have a right to the use and quiet enjoyment of the property, and the Association has the duty to oversee and ensure said right.

76. Defendants have engaged, and continue to engage, in a pattern of continuous, intentional disruptive and threatening actions against the Association, its BOD, and Association's members including the continuous dissemination of false information about the BOD, and the wrongful solicitation and harassment of members, including threats of violence to members who disagree with Defendants.

77. Defendants' intentional disruptive and threatening actions against the Association, its BOD, and the Association's members substantially interfere with members' rights to the use and quiet enjoyment of the property. In fact, threatened members fear using the commons elements of the building due to Defendants' threatening and inciteful conduct.

17

78.    Defendants' intentional disruptive and threatening actions against the Association, its membership, and its BOD constitute an ongoing and continuous private nuisance.

**WHEREFORE**, the Association respectfully requests that this Court enter a judgment against Defendants for private nuisance by enjoining Defendants from engaging in their disruptive and threating actions against the Association and its BOD and members which substantially interfere with the members' right to use and quiet enjoy their property, grant damages, attorneys' fees and costs pursuant to Florida Statute 718.303, and all other relief deemed just and proper.

<u>**COUNT IV:**</u>
**DEFAMATION – LIBEL**
*(Against Defendants)*

79.    The Association realleges paragraphs one (1) through fifty-six (56), as if fully set forth herein.

80.    Defendants have published false defamatory written statements about the Association and its BOD to third parties by disseminating lies and false information about Parker Plaza and its BOD via emails, pamphlets, and letters (*See* Exhibits "A" through "N") including, but not limited to, false accusations of mismanagement of funds, corruption, and non-performance of duties to the detriment of residents, sending them to the Association's members as well as non-members such as banks, realtors, contractors, and tenants. Defendants engaged in a written smear and disparagement campaign against the Association and its BOD by sending numerous emails replete with defamatory misrepresentations to the members and non-members.

81.    Defendants' false written statements about the Association have caused, and will continue to cause, injury to the Association and its BOD's goodwill and reputation. In fact, members and non-members have become unnecessarily skeptical of the Association and its BOD

and its management of funds. Also, Defendants' false written statements effectively delayed the approval of loans required to maintain and repair Parker Plaza building and cost more unnecessarily.

82.     The Association and its BOD are not limited public figures as there is no public controversy involved in this case. Regardless, Defendants have acted with actual malice as established above. Defendants knew the statements were false or acted with reckless disregard as to the falsity of the statements. Even after the forensic auditor hired by Defendants examined all the claims against the Association and BOD and determined there was no basis for the claims, Defendants buried the report and continued to make false written accusations against the Association and its BOD.

83.     Defendants' defamatory written statements are in furtherance of improper, unlawful purposes such as preventing the necessary maintenance and repairs to the building and usurping the BOD by illegal means.

84.     Defendants' defamatory statements are not opinion protected by the right to free speech as these statements are based on false, inaccurate facts.

**WHEREFORE**, the Association respectfully requests that this Court enter a judgment against Defendants for defamation - libel, enjoined Defendants from publishing written false statements about the Association and its BOD to third parties in furtherance of improper and unlawful purposes, attorneys' fees and costs pursuant to Florida Statute 718.303, and all other relief deemed just and proper

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

<u>COUNT V</u>:
## DEFAMATION – SLANDER
*(Against Defendants)*

85.      The Association realleges paragraphs one (1) through fifty-six (56), as if fully set forth herein.

86.      Defendants published false defamatory oral statements about the Association and its BOD to third parties by orally disseminating lies and false information about Parker Plaza and its BOD including, but not limited to, oral accusations of mismanagement of funds, corruption, and non-performance of duties to the detriment of residents, to the Association's members as well as non-members such as banks, realtors, contractors, and tenants. Defendants engaged in an oral smear and disparage campaign against the Association and its BOD by stating defamatory misrepresentations to the members and non-members.

87.      Defendants' false oral statements about the Association have caused, and will continue to cause, injury to the Association and its BOD's goodwill and reputation. In fact, members and non-members have become concerned and wearied about the Association and its BOD and its management of funds. Also, Defendants' false oral statements effectively delayed the approval of loans required to maintain and repair Parker Plaza building.

88.      The Association and its BOD are not limited public figures as there is no public controversy involved in this case. Regardless, Defendants have acted with actual malice as established above. Defendants knew the statements were false or acted with reckless disregard as to the falsity of the statements. Even after the forensic auditor hired by Defendants examined all the claims against the Association and BOD and determined there was no basis for the claims,

Defendants buried the report and continue to make false oral accusations against the Association and its BOD even though Defendants knew the accusations to be false.

89.     Defendants' defamatory oral statements are in furtherance of improper, unlawful purposes such as preventing the necessary maintenance and repairs to the building and usurping the BOD by illegal means.

90.      Defendants' defamatory statements are not opinion protected by the right to free speech as these statements are based on false, inaccurate facts.

**WHEREFORE**, the Association respectfully requests that this Court enter a judgment against Defendants for defamation - slander, enjoined Defendants from publishing oral false statements about the Association and its BOD to third parties in furtherance of improper purposes, attorneys' fees and costs pursuant to Florida Statute 718.303, and all other relief deemed just and proper

## COUNT VI:
## TRADE LIBEL
### *(Against Defendants)*

91.     The Association realleges paragraphs one (1) through fifty-six (56), as if fully set forth herein.

92.     Defendants published written defamatory falsehoods about the Association and its BOD to third parties by disseminating lies and false information about Parker Plaza and its BOD by emails and letters (See Exhibits "A" through "N") including, but not limited to, accusations of mismanagement of funds, corruption, and non-performance of duties to the detriment of residents, sent to the Association's members as well as non-members such as banks, realtors, contractors, and tenants. Defendants engaged in a written smear and disparage campaign against the Association

21

and its BOD by sending numerous emails replete with misrepresentations to the members and non-members.

93.     Defendants knew that the defamatory written falsehoods about the Association and its BOD would likely result in inducing members and non-members to not deal with the Association and its BOD.

94.     Defendants have acted with actual malice as established above. Defendants knew the statements were false or acted with reckless disregard as to the falsity of the statements. In fact, Defendants' wrongful misconduct intentionally and purposefully aimed at undermining the Association's services to its members and relationship with non-members such as banks and contractors.

95.     Defendants' knew that their misconduct was so egregious that they intentionally concealed the final report of their own hired expert, SFPOC, which concluded that the Association had not engaged in criminal activity nor regulatory non-compliance.

96.     Defendants' defamatory falsehoods about the Association and it BOD have played, and continue to play, a material and substantial part in inducing the Association's members and non-members not to deal with the Association and its BOD.

97.     Defendants' falsehoods about the Association have caused, and will continue to cause, injury to the Association and its BOD's goodwill and reputation. In fact, members and non-members have become concerned and wearied about the Association and its BOD and its management of funds. Also, Defendants' false statements effectively delayed the approval of loans required to maintain and repair Parker Plaza building.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

98.     Defendants' defamatory statements are not opinion protected by the right to free speech as these statements are based on false, inaccurate facts.

**WHEREFORE**, the Association respectfully requests that this Court enter a judgment against Defendants for trade libel, enjoined Defendants from publishing written and oral false statements about the Association and its BOD to third parties in furtherance of improper purposes, grant damages, attorneys' fees and costs pursuant to Florida Statute 718.303, and all other relief deemed just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Parker Plaza hereby demands a Trial by Jury of any and all issues triable of right by a jury.

Respectfully submitted,

/s/ Luis S. Konski
Luis S. Konski
Fla. Bar No. 207837
Email: lkonski@fowler-white.com

Daniel A. Milian
Fla. Bar No. 74803
Email: dmilian@fowler-white.com

Joseph Englander
Fla. Bar No. 935565
Email: jenglander@fowler-white.com

Ana E. Tovar
Fla. Bar No. 1008100
Email: atovar@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:     (305) 789-9201

Case 0:22-cv-61638-WPD

## CERTIFICATE OF SERVICE

      I hereby certify that on November 17, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel via transmission of Notices of Electronic Filing generated by CM/ECF, and on Richard S. Lubliner, Lubliner Law, PLLC, counsel for Defendants, 1645 Palm Beach Lakes Boulevard, Suite 1200, West Palm Beach, Florida 33401, at rich@lubliner-law.com and carolina@lubliner-law.com.

/s/ Ana E. Tovar
Ana E. Tovar

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200