July 2, 2021

Mr. Simon Sherman
Condominium Association of Parker Plaza Estates, Inc.
2030 S. Ocean Drive, Unit 1427
Hallandale Beach, Florida 33009

Re:  Condominium Association of Parker Plaza Estates, Inc. – Final Summary

Dear Simon Sherman,

On July 28, 2020, you retained the services of South Florida Property Owners Consulting, LLC (SFPOC) to obtain records from your association, and to investigate your allegation of possible financial misrepresentation and/or regulatory violations concerning the Condominium Association of Parker Plaza Estates, Inc. (Association).

**Background**

On June 30, 2020, you expressed concern with the inability to obtain certain association records from the Association and the property management company, AKAM Services, and requested the services of SFPOC to assist in obtaining records for fiscal years 2019 and 2020.

The scope of the engagement for SFPOC professional services was outlined in the Engagement Letter dated July 28, 2020, and included the following:

*In-depth Accounting Review*
*Criminal Activity and/or Regulatory Investigation(s) (if applicable)*

*Association and Board of Director (BOD) Members Investigation to include:*

- *Act as the Client representative in requesting records from the Association and/or Property Management Company (per § 718.111(12), Florida Statutes)*
- *Thorough review of all **records received** by SFPOC Accountants and Investigative Team*
- *Review bids and contracts with vendors*
- *Ensure vendor licensing with State/County*
- *Conduct Background checks for individuals under investigation, if required ($75 per individual)*
- *Review the Declaration of Condominium to ensure compliance by the Association, Board Members and Officers, and Property Management Company*

*Our objectives were outlined as follows:*

> *To conduct a thorough financial and investigatory review in order to provide a written report on our findings related to the allegations/complaint provided by the Client, outlining regulatory violations and/or criminal misconduct, if any are found to be substantiated.*

> The Engagement Letter outlined that the timing and completion of our services was dependent upon receipt of the above documentation from you or third parties, and as a result of information received, the scope and relevant time periods were subject to change as the engagement progressed.

It is worth noting that during our engagement period, Federal, State and Local restrictions were in place due to Covid-19 beginning in March 2020.  With many businesses, schools and Government agencies temporarily closing and then modifying their business practices, including SFPOC, obtaining records, documents and in-person meetings were mandated to be restricted until Covid-19 phases permitted resuming usual business practices.  As a result of the pandemic, SFPOC timelines to complete our investigation were extended beyond our control.  Zoom meetings, electronic communications and document collection were practices SFPOC instituted to continue investigations during Covid-19 restrictions.

**SFPOC Investigation**

SFPOC prepared and submitted an Access to Records Request on your behalf on July 30, 2020, pursuant to Florida State Statutes 718.111 (12), in order to access financial records related to the Association.  Three separate Access to Record Requests, via certified mail, were sent this date, to the President of the Association, AKAM, and the Association's attorney.  SFPOC responded to Parker Plaza on August 21, 2020, to retrieve the documents pursuant to the Access to Records Request.  At the conclusion of the retrieval, a second visit to Parker Plaza was scheduled for September 11, 2020, to scan the remaining documents from the records request.  AKAM forwarded 10 attachments on August 24, 2020, with a portion of the missing documents.  These documents and the documents personally retrieved by SFPOC were reviewed.

In mid-August 2020, David Goldberger emailed attorney Russell Robbins, at your request, a copy of the cease-and-desist letter forwarded to you by the Association's Attorney Matthew Maranges.  Any further communication regarding this matter was between Mr. Robbins and yourself.

Tamara Reyes, Lisa Vila, and David Goldberger responded to Parker Plaza on September 11, 2020, and additional documents were retrieved.  The following documents were not available, however AKAM informed SFPOC that they would email them as soon as possible to honor our request.

1. Copy of current and past contracts between Parker Plaza and the Association's attorney
2. Copy of current and past contracts between Parker Plaza and the Certified Public Accountant
3. Copies of insurance claims from January 1, 2018, to September 11, 2020
4. Special assessments, if applicable, from January 1, 2018, to September 11, 2020, to include the fee schedule for owner's and the owner's payment legers
5. All Association architectural approvals or disapprovals from January 1, 2018, to September 11, 2020
6. List of Grievance Committee members and all minutes from January 1, 2018, to September 11, 2020

AKAM forwarded 4 attachments on September 17, 2020, which were reviewed.  AKAM was sent a return email addressing the remaining 2 items pending from the July 30, 2020, records request and you were updated on the status of the document request via email on September 21, 2020.

AKAM forwarded the insurance claims via email on September 24, 2020, which contained 8 separate attachments. David Goldberger responded to your email received on September 25, 2020, and reiterated the process going forward.

C&G Financial Group emailed David Goldberger advising that the August and September 2020 monthly financials were missing. AKAM was notified via email on this same date, November 21, 2020. The 2 monthly sets of financials were forwarded to SFPOC, via AKAM, which were forwarded to C&G Financial Group on November 22, 2020.

On November 27, 2020, C&G Financial Group notified SFPOC that the financial analysis was completed and on November 30, 2020, a Zoom meeting was scheduled with you, to review the analysis, on Monday, December 7, 2020, at 7:00 p.m.

Those in attendance for the Zoom meeting were:

Suzanne Lauton, Frank Burgos from SFPOC, C&G Financial Group (2 representatives), yourself, Alla Shlyapochnik, Maria Ines Marino, Jose Espinel, and Alexander Dukman.

C&G Financial Group presented the Observations and associated spreadsheets for fiscal year FY19 and FY20. The Association's fiscal year runs from October to September. The Association's budgets reviewed, revealed that the Association does not have a balanced budget, and the FY20 budget showed a deficit of $1.4 million dollars, with a $70,000 deficit showing for FY19. C&G Financial Group further explained that the budget fluctuates in some categories where the budgeted amount should be fixed throughout the FY, with adjustments made as necessary, not alternating the budget amount. According to C&G Financial Group some bank statements and financial statements were not complete, thus some information in the analysis is limited and based only on the documents reviewed.

There was a $1.6 million-dollar Special Assessment in March 2020, equating to a $5,000 payment for each unit owner, based on 520 units.  The math totals $2.6 million dollars if each unit paid their share in full. C&G Financial Group explained to the group that it could mean that some owners had not paid, or only made partial payments.

The Zoom participants were also advised that C&G Financial Group, basing their analysis on the documents provided for the Association's finances, and no indication was evident of a crime or regulatory violation having occurred to this point. You inquired about a $700,000 surplus, to which C&G Financial Group explained there was no surplus in FY19 or FY20. A $700,000 carryover was noted for the prior year as a loss/excess, but this is not proper accounting practice and should not be carried over.

C&G Financial Group further advised that they did not see $610,000 temporarily transferred from a Special Assessment account to an Operating account. In September 2019, there were fixed assets of $975,000 under the category of Land/Facilities on the balance sheet. When FY20 started the $975,000 was not reflected. C&G Financial Group inquired if the Association sold any land or buildings, and the response was no from both yourself and Mr. Dukman. C&G Financial Group also noted that some vendors were paid from the Special Assessment account. Additionally, the accountants noted one vender (Mr. Michael Fagan) was paid directly via Association check numbers: 1563, 4050, and 4062. Mr. Curran and Mr. Ruma also had checks issued to them. Specifically, check number 1463 issued to Mr. Ruma for $1,500 was from the Special Assessment account ending in 1561.

Note:  The Department of Business and Professional Regulation (DBPR) will not investigate funds used from accounts that were not purposed for certain expenses as long as the monies were used for Association business.  This excludes certain types of reserve accounts.

As the Observation Meeting was concluding Ms. Lauton informed the Parker Plaza group that the Observations and spreadsheets would be forwarded to you for the groups review as well as the preparation of any additional questions.  On December 8, 2020, the documents were emailed as promised.

On December 12, 2020, David Goldberger spoke with you and discussed various items that would be requested on a 2nd Access to Records Request.  Those items were documented on a 2nd request form and was forwarded to Mr. Burgos to verify all additional items discussed during the Observation meeting were also on the 2nd request.  Mr. Burgos mailed the 2nd request to Association Attorney Maranges on December 26, 2020, once you signed the records request document.  SFPOC emailed you on December 28, 2020, with an update on the mailing.

On January 12, 2021, Mr. Burgos emailed Attorney Maranges requesting the status of the availability of the documents requested on the 2nd request.  Attorney Maranges informed SFPOC that he may not have forwarded the form to the new management company, First Service and/or the Board of Directors (BOD).  You were again updated regarding this information.

Mr. Maranges, via email on January 13, 2021, related to SFPOC that due to the recent change in management, the holidays, a large restoration project, and the upcoming BOD elections it has been a stressful time.  Mr. Maranges did however state that Julie Gonzalez will be coordinating a time to inspect the documents on-site at Parker Plaza.  Mr. Maranges also informed Mr. Burgos that due to attorney-client privileges the request for his firm's invoices, including detailed time entries would not be made available to third parties.

Julie Gonzalez was sent an email on January 14, 2021, by Mr. Burgos, requesting to meet with her for the purpose of retrieving the documents on the 2nd records request.  The date to accomplish this was set for Tuesday, January 19, 2021, at 10:00 a.m., and you were advised of this appointment.

Between January 16, 2021, and February 3, 2021, you and Mr. Burgos exchanged several emails pertaining to the status of the investigation as well as the additional documents obtained via Julie Gonzalez.

On February 26, 2021, you and Mr. Burgos discussed at length your email dated February 22, 2021.  This telephone call was in place of the previously scheduled conference call set for March 1, 2021.  You were specific regarding a few of the items addressed in your email, which are highlighted below:

> You felt that the previous BOD election results were manipulated, and you can prove this.  SFPOC does not investigate election results and you were advised to contact the State of Florida Ombudsman's office as they deal with election problems.
>
> You were concerned about monies paid to homeowners, by the Association, where the checks had been signed by the Treasurer, Mr. Robert Oppenheimer who was improperly elected as he is not a homeowner at Parker Plaza.  This information was not verified, as again SFPOC does not handle election complaints and previous complaints filed by SFPOC, with the DBPR, regarding non-owners holding a BOD position, even in light of it violating the association bylaws, are not investigated by the DBPR.  The DBPR informed SFPOC previously, that a homeowner would need to address a non-owner holding a BOD position, via the State of Florida arbitration process.  A private attorney would need to assist with arbitration.

You also believe that several vendors hired by the Association for various projects were being paid, but they did not complete the work hired to perform. Additionally, you also advised that some vendors were also doing private work on individual owner's units using materials purchased via Association funds.

You also claimed work totaling $1.4 million dollars was paid by the Association to do private repairs.

C&G Financial Group found no documentation to support these expenditure claims during their financial analysis of the Association's financials based on the records obtained and reviewed.

A conference call between SFPOC (Frank Burgos, Tamara Reyes, and David Goldberger) and yourself occurred on March 17, 2021. You requested a list of documents SFPOC obtained and those not obtained from both records requests, not the records themselves, which will be provided with this report. The email containing the list of allegations from yourself was also forwarded to C&G Financial Group for their review. Your request regarding the documents received and not received was honored, via email, on March 19, 2021.

David Goldberger responded to one of your May 2021 emails in great detail. The email was written and forwarded on June 1, 2021, and it covered many of the same issues as this report.

SFPOC has provided answers to several concerns posed over the past several months below, which were not addressed prior to this report:

*The accountants on April 11, 2021, provided the following synopsis regarding the invoices, check requests, and check disbursements they reviewed pertaining to the 2nd records request*, which you specifically had concerns and requested clarification on.

*No inappropriate transactions were identified for:*

*o DCJ Stone & Flooring Corp.*

*o Paterson, Baldor, and Maranges, PLLC.*

*o S & A Drywall Hangers, LLC.*

*o Spark Electric, Inc.*

*o Checks paid to Jose Perez.*

*o Checks paid to Stephen Ruma.*

*o Checks paid to Lillian Nieves.*

*o Jack Cogan*

*§ Check #1069:  $3,421.64.*

*§ Reimbursement for dwelling due to mold remediation in unit 1910.*

*§ Hotel reimbursement at The Diplomat Beach Resort.*

5

 *o Nina Palmieri*

 *§ Check #1099:  $6,519.*

 *§ Reimbursement for dwelling due to mold remediation in unit 2027.*

 *o Michael Fagan*

 *Check #1563:  $1,547.93.*

 *§ Reimbursement to replace mattress after water damage caused by roof leak, and cleanup expenses.*

 *o Michael Faynleyb*

 *§ Check #1669:  $2,000.*

 *§ Reimbursement for two months lodging due to mold remediation in unit 1617.*

SFPOC compiled an Excel spreadsheet of all contracts/bids obtained through the Access to Records Request. SFPOC and C & G are limited to reviewing those documents provided. Additionally, SFPOC completed a detailed Excel spreadsheet regarding the numerous vendors/contractors that you had specific concerns with. This list of vendors/contractors is detailed on the C&G Supplemental Excel Spreadsheet dated December 2020 (see Tab labeled Vendor-Client), previously provided to you. This list of vendors does not represent all of the contracts provided pursuant to the Access to Records Request, rather it is limited to those you requested the information regarding ensuring licensure with the State. Both spreadsheets can be located on the USB drive provided with this report.

SFPOC's investigation revealed no indication of criminal activity, which could be brought to law enforcement for criminal prosecution.   No suggestion of Association BOD members regulatory violations was noted, which could be presented to the DBPR.  SFPOC conducted a thorough review of all documents provided and followed all investigative leads available in the matter.

SFPOC takes pride in providing professional investigative services which assist homeowners by providing a more complete financial picture of their Association while confirming Association bylaws are being followed by the BOD on matters of concern.  We do not control the outcome of an investigation, as we are seeking facts and truth.   We hope that our retrieval of documents you requested, our investigative findings, and the C&G financial analysis have assisted you in creating a more transparent financial overview and have provided answers to those matters of concern to you.

Along with this final summary, SFPOC has placed all electronically saved documentation obtained throughout this investigation onto a portable medium for your convenience.  Also, previously provided for your review were the observation reports, and the Excel spreadsheets prepared by C&G Financial Group.

It has been a pleasure and honor to assist you with the issues involving your association.

Sincerely,

*[signature]*

South Florida Property Owners Consulting, LLC

***The observations and recommendations contained in this report are based on information, as well as documentation provided to SFPOC by either the client and/or the Condominium Association and/or the property manager. SFPOC does not, nor do we have the credentials to review, validate, or investigate construction issues associated with building permits or the lack of building permits, or contractual obligations between the Association and/or building contractors, architectural, or engineering firms. Additionally, all structural, electrical, plumbing, and other building trades or issues must be addressed with the proper City, County, or State building officials having legal jurisdiction where the property is located.