UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CONDOMINIUM ASSOCIATION OF PARKER
PLAZA ESTATES, INC.

    Plaintiff,                                                             CASE NO. 22-CV-61638

v.

PAVEL MOREFF AND SIMON SHERMAN,

    Defendants.

_____/

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

    Defendant, Simon Sherman ("Sherman"), and Defendant, Pavel Moreff ("Moreff" and together with Sherman, "Defendants"), by and through undersigned counsel, and pursuant to Local Rule 56.1(b) of the United States District Court of the Southern District of Florida, hereby submit their Statement of Material Facts In Support of Motion for Summary Judgment

    1.    Sherman, and Moreff, each are a member of units located in a building with an address of 2030 South Ocean Drive, Hallandale, Florida 33009, which is managed, governed, and operated by Condominium Association of Parker Plaza Estates, Inc. (the "Association"), by and through its Board of Directors (the "Board"), pursuant to the Association's governing documents, and Chapter 718 of the Florida Statutes ("Chapter 718"). *See* ¶3 of the Affidavit of Simon Sherman In Support of Motion for Summary Judgment (the "Sherman Affidavit") and ¶3 of the Affidavit of Pavel Moreff In Support of Motion for Summary Judgment (the "Moreff Affidavit").

    2.    On November 9, 2021, Sherman, and over a dozen members of the Association, filed a Verified Derivative Complaint against the Association and several members of the Board, which is pending in the Seventeenth Judicial Circuit In and For Broward County, Florida (Case No. CACE202061), thereby commencing a derivative lawsuit (the "Derivative Suit") against the aforementioned defendants. *See* Sherman Affidavit at ¶4.

    3.    After the Plaintiffs in the "Derivative Suit filed an Amended Verified Complaint, the Association filed a Motion to Stay Derivative Proceedings, pursuant to section 617.0401(2) of

the Florida Statutes, so a purportedly independent committee appointed by members of the purportedly independent Board could conduct an alleged reasonable investigation to determine whether the Derivative Suit was in the best interests of the Association. *Id*. at ¶5.

4. On March 1, 2022, an Agreed Order on Defendant Association's Motion to Stay Derivative Proceedings was entered because the purportedly independent committee had concluded its investigation. *Id*. at ¶6.

5. The purportedly independent committee appointed by the purportedly independent members of the Board issued a report that concluded that the maintenance of the Derivative Suit was not in the best interests of the Association. *Id*. at ¶7.

6. After the Plaintiffs filed a Second Amended Verified Complaint (the "Second Amended Complaint") in which, *inter alia*, they alleged that the purportedly independent Board members were not independent, and the purportedly independent committee was not, in fact, independent, the Association filed a second Motion to Stay Derivative Proceedings so it could complete a second purportedly independent, alleged good faith investigation as to whether the Derivative Suit was in the best interests of the Association, and prepare, and provide, a report with respect to same. *Id*. at ¶8.

7. The gravamen of the Second Amended Complaint is that certain members of the Board used Association funds to complete repairs or renovations to their individual units, that the Board violated chapter 718 of the Florida Statutes by entering into contracts impermissibly spending hundreds of thousand of dollars of Association funds without obtaining bids and without approval of the Board at duly noticed meetings costing the Association, that the Board altered budgets to cover up their unlawful expenditures, and that the Association falsified voting and unlawfully obtained a loan. *Id*. at ¶9.

8. Attached to the Sherman Affidavit at Exhibit "A" is an email from Stephen Ruma ("Ruma") the former Maintenance Director of the Association, to Sherman, dated June 10, 2022, in which Ruma confirms, *inter alia*, that the Board manipulated the results of its Annual Election,

that certain Board members used Association funds to impermissibly perform repairs/renovations to their own units, and that a vendor of the Association complained to Ruma that a member of the Board, Jeffrey Leibowitz ("Leibowitz"), insisted that such vendor purchase insurance from an insurance company associated with Leibowitz. *Id*. at ¶10, and Exhibit "A" thereto.

9. On March 16, 2023, an Order of Defendant's Motion to Stay Derivative Suit was entered pursuant to which a second purportedly independent committee could complete its investigation into whether the Derivative Suit was in the best interests of the Association. *Id*. at ¶11.

10. Pursuant to the Order, the Association is required to file the purportedly independent committee's report as to whether the Derivative Suit is in the best interests of the Association on April 14, 2023. *Id*. at ¶12.

11. In addition to the Derivative Suit, Board member Michael Fagan ("Fagan"), who Ruma confirms impermissibly used Association funds to repair/reconstruct his unit, filed a lawsuit against Sherman which is currently pending in the 17th Judicial Circuit In and For Broward County, Florida (Case No. CACE22-001294 Div:14) in which, despite evidence to the contrary, including the Ruma Email, Fagan sues Sherman for many of the same alleged defamatory statements alleged in this proceeding. *Id*. at ¶ 14.

12. After Defendants filed a Motion to Dismiss the original Complaint filed by the Association, the Association filed its First Amended Complaint against Defendants [ECF 21] in which it asserts the following causes of action: (i) Count I False Designation of Origin (Lanham Act, 15 U.S.C § 1125(a)) (*Against Sherman*); (ii) Count II Infringement of Unregistered Trademarks (Lanham Act 15 U.S.C § 1125(a)) (*Against Sherman*); (iii) Count III Private Nuisance (*Against Defendants*); (iv) Count IV: Defamation – Libel (*Against Defendants*); (v) Count V: Defamation – Slander (*Against Defendants*); and (vi) Count VI: Trade Libel (*Against Defendants*).

13. Count I of the Complaint alleges that Sherman's use of "the display name PARKER PLAZA . . . is identical to and confusing similar to the PARKER PLAZA trademark. Complaint at ¶59.

14. The Association alleges that "Sherman's unauthorized use of the PARKER PLAZA display name, in connection with, and to interfere with, the Association's services in commerce to and with its members, falsely suggests that these services, or interference thereof, are provided by connected with, sponsored by, affiliated with, or related to the Association . . . and that Sherman's unauthorized use of the PARKER PLAZA constitutes a false designation of origin in violation of 15 U.S.C. ¶ 1125(a)." *Id*. at ¶61 – 62.

15. In Count II of the Complaint, the Association alleges that Sherman's use of "[t]he Association['s] prior trademark rights over the PARKER PLAZA Mark by virtue of its public use of the MARK in interstate commerce directed to potential members and through its services to members, including services through its website." *Id*. at ¶66.

16. The Association alleges that "Sherman's use of the display name PARKER PLAZA in the emails from IGOR is identical to and confusingly similar to the Mark." *Id*. at ¶68.

17. Parker Plaza Estates is a fictitious named registered with the Florida Secretary of state to a Florida LLC named Big Apple Srvs LLC. *See* ¶17 of the Sherman Affidavit and Exhibit "B" thereto.

18. In Count III of the Complaint, the Association alleges that Defendants' conduct constitutes a private nuisance in that that they purportedly "engaged and continue to engage, in a pattern of continuous, intentional disruptive and threatening actins against the Association, its BOD, and Association's members including the continuous dissemination of false information about the BOD, and the wrongful solicitation and harassment of members, including threats of violence to members who disagree with Defendants." *Complaint* at ¶76.

19. In Count IV of the Complaint, the Association alleges that "Defendants published false defamatory written statements to third parties by disseminating lies and false information

about Parker Plaza and its BOD via emails, pamphlet, and letter (*See* Exhibits "A" through "N") . . .." Complaint at ¶80.

20. Exhibit "C, Composite Exhibit "E" at p. 6, and Composite Exhibit "I" at p. 2, of the Complaint contain "DISCLAIMERS" which state that the emails are from a group of owners, who are not directly associated with the Board and is not representing the Association, and they are sharing their personal opinions regarding the subject of interest.

21. For example, Exhibit "B" of the Complaint, states, in pertinent part:

> **Disclaimer**: *IGOR is a group of owners, which is not directly associated with the Board and is not representing the entire Association. Nevertheless IGOR is very glad to share limited knowledge and personal opinion of its members regarding the subject of interest with the entire Board and with members of our Association. While IGOR opinion cannot be 100% accurate, IGOR believes that its achievements, while working on its projects, will help the Board and the ordinary members of our association to overcome current financial difficulties.*

22. In Count V of the Complaint, the Association alleges that "Defendants published false defamatory oral statements about the Association and its BOD to third parties by orally disseminating lies and false information about Parker Plaza and its BOD including, but not limited to, oral accusations of mismanagement of funds, corruption, and non-performance of duties to the detriment of residents, to the Association's members as well as non-members such as banks, realtors, contractors, and tenants. Defendants engaged in an oral smear and disparage campaign against the Association and its BOD by sending numerous emails replete with misrepresentations to the members and non-members." *Complaint* at ¶86.

23. In Count VI of the Complaint, the Association alleges that "Defendants published false defamatory oral statements about the Association and its BOD to third parties by orally disseminating lies and false information about Parker Plaza and its BOD including, but not limited to, oral accusations of mismanagement of funds, corruption, and non-performance of duties to the detriment of residents, to the Association's members as well as non-members such as banks, realtors, contractors, and tenants. Defendants engaged in an oral smear and disparage campaign

against the Association and its BOD by sending numerous emails replete with misrepresentations to the members and non-members." *Id*. at ¶92.

24. The Association does not allege special damages in Count VI of the Complaint.

25. On May 24, 2020, Sherman sent Matthew Maranges, Esq. ("Maranages"), an attorney for the Association, an email (the "May 24th Maranges Email") in which Sherman notified him about eleven (11) possible irregularities occurring at the Association, and listed them therein. *See* Sherman Affidavit at ¶27 and Exhibit "C" thereto.

26. The May 24th Maranges Email contained the following language:

> Disclaimer: Please note, the list of *possible* irregularities presented in the above is based *on my best knowledge and my personal opinion* and do not pretend to be complete and/or 100% accurate.

*Id*. (emphasis not added). *Id*. at ¶29.

27. In the May 24th Maranges Email, Sherman told Maranges to feel free to contact him so that I could provide additional data regarding "some of my *personal* statements opinion." *Id*. (emphasis not added). *Id*. at ¶30.

28. On May 26, 2020, Maranges sent Sherman an email and thanked him and told him he would pass this information onto the Board. *Id*. at ¶31.

29. On May 26, 2020, Sherman responded to Maranges and asked him to keep the email Sherman sent him private because it would trigger "additional acts of harassment, intimidation, mockeries, etc." *Id*. at ¶32.

30. Sherman advised Maranges that two (2) days prior, Fagan threatened to sue him and called Sherman "Jewish Troublemaker" and "Russian Cucaracha." *Id*. at ¶33.

31. In a letter dated August 13, 2020, from Maranges, to Sherman (the "August 13th Maranges Letter"), Maranges threatens to, among other things, sue Sherman for communicating with members of the Association, and for making valid record requests. *Id*. at ¶ 33 and composite Exhibit "D" thereto.

32. Maranges called Sherman "**little more than a recalcitrant, gadfly 'condo commando . . ..'**" *Id.* at ¶39 (emphasis added).

33. On the bottom of page two (2) of the August 13th Maranges Letter, Maranges, quoting Shakespeare, stated that Sherman's "inartful communications to the Board and the Association's membership and non-members tend [*sic*] weave a 'tale of sound and fury, signifying nothing.'" *Id.* at ¶42.

Dated: April 7, 2023.

LUBLINER LAW PLLC
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 207-2018
Facsimile: (561) 584-7227
rich@lubliner-law.com
carolina@lubliner-law.com

BY:  */s/ Richard S. Lubliner*
RICHARD S. LUBLINER, ESQ.
FBN: 0047741

## CERTIFICATE OF SERVICE

I/WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail and/or by US Mail on this April 7, 2023, to the individuals/entities listed on the attached Service List.

/s/
Richard S. Lubliner

**SERVICE LIST**
Luis S. Konski, Esq.
Daniel A. Milian, Esq.
Joseph Englander, Esq.
Ana E. Tovar, Esq.
Fowler White Burnett, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, FL 33131
lkonski@fowler-white.com
dmilian@fowler-white.com
jenglander@fowler-white.com
atovar@fowler-white.com