UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CONDOMINIUM ASSOCIATION OF PARKER
PLAZA ESTATES, INC.

     Plaintiff,                                      CASE NO. 22-CV-61638

v.

PAVEL MOREFF AND SIMON SHERMAN,

     Defendants.
_____/

## AFFIDAVIT OF PAVEL MOREFF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA

COUNTY OF BROWARD

BEFORE ME, the undersigned authority, appeared Defendant, Pavel Moreff who, being first duly sworn, deposes and says:

    1.     I am over the age of eighteen (18) and otherwise *sui juris*.

    2.     This Affidavit is based upon my personal knowledge.

    3.     I am an owner of a unit located in a building with an address of 2030 South Ocean Drive, Hallandale, Florida 33009 (the "Building") which is managed, governed, and operated by Condominium Association of Parker Plaza Estates, Inc. (the "Association"), by and through its Board of Directors (the "Board"), pursuant to the Association's governing documents, and Chapter 718 of the Florida Statutes ("Chapter 718").

    4.     The subject complaint (the "Complaint") filed by Association is part of a campaign of bullying, harassment, and intimidation on the part of the Board, and the Association's attorneys, in order to silence me from engaging in protected free speech to advise the other members of the Association of the misconduct of certain Board members.

    5.     However, the Board cannot stop me from engaging in protected free speech, a basic, fundamental tenet as evidenced by the fact that it is contained in the First Amendment of the Constitution.

6. The Board has targeted me because I, and other members, have shed transparency on the Board's actions.

7. In the epitome of revenge, the Board caused the lawsuit to be filed, which, my counsel advises, is the poster-child of a SLAPP lawsuit.

8. The Complaint is retribution for, among other things, my questioning of the Board's roof repair project and attempts to take out an approximately Twenty-Seven Million Dollar ($27,000,000.00) loan (the "Loan").

9. I have an extensive experience in running a condominium Association in Brooklyn, New York, where I have served as President of the Board of Directors for the last eight (8) years.

10. In such capacity, I gained substantial experience regarding the execution of various capital projects such as roof replacement (including insulation, permanent roof anchors, parapets, etc.), façade repair, plumbing, construction of domestic hot water systems, and lobby renovation.

11. As a member of the Association, I offered the Board my assistance with respect to the ongoing roof replacement project.

12. The Board provided me with several requested documents related to the roof replacement.

13. I have reviewed the Roofing Proposal/Contract between the Association and Allied Roofing, dated February 8, 2022, a copy of which is attached hereto at Exhibit "A."

14. I have also reviewed the Agreement between the Association and Allied Roofing, made and entered into on February 17, 2022, a copy of which is attached hereto at Exhibit "B."

15. I also discovered that the President of the Board signed another document, called Contract, between the Association and Allied Roofing made and entered into on March 23, 2022, a copy of which is attached hereto at Exhibit "C."

16. Surprisingly, the proposal, agreement and contract differ significantly in technical and budgetary aspects from each other which were not disclosed to members of the Association, nor approved at a duly noticed Board meeting, in derogation of Chapter 718 of the Florida Statutes and the Association's governing documents.

17. While reviewing these documents, my attention was drawn to the fact that Allied Roofing suggested using gravel (stones) as a component of the top layer.

18. In Florida, during storms and hurricanes, the stones can fly off the roof and can damage parked cars, break the windows of nearby buildings, and become very dangerous for pedestrians.

19. Another problem I found was the lack of an insulating membrane (required by the State of Florida).

20. Interestingly, the value of many of the materials contained in the aforementioned documents was almost twice their fair market value at the time when I reviewed them.

21. I was able to confirm this by simply going to Home Depot.

22. I was shocked by what I saw.

23. On April 25, 2022, I sent the Board, and the Association's counsel, Matthew Maranges, Esq. ("Maranges"), an email in which I outlined my concerns so that they could be properly addressed. A copy of this email is attached hereto at Exhibit "D."

24. I still have not received a response to my email.

25. Moreover, according to data presented to me by Jason Cintron, General Manager of Castle Group, the Association's Property Manager, it appears that the Association already paid Allied Roofing at least Six Hundred Forty-Four Thousand Dollars ($644,000.00) instead of the agreed upon amount of Two Hundred Forty Thousand Dollars ($240,000.00) as set forth in the proposal to install a temporary roof, which was approved at a duly noticed Board meeting that occurred on February 8, 2022.

26. When members became concerned with the Association taking out the Loan given the apparent misconduct of the Board in connection with same, I agreed to be the contact person for FREEDOM4PPA.

27. FREEDON4PPA is a group of concerned members of the Association formed to educate members of the Association about the Board's mismanagement, wasting of Association funds, and violations of the Florida statutes, and the Association's governing documents.

28. FREEDOM4PPA informed potential lenders that the list of projects allegedly needed for obtaining a fifty (50) year certification of the Building as the justification for the Loan was fabricated.

29. One such email is attached to the Complaint at Exhibit "E."

30. I explained Abel Hernandez of Valley Bank that the contemplated loan: (i) violated the Association's Declaration of Condominium because this would be considered an alteration of addition to the common elements of the Association, thereby requiring seventy-five (75) percent of the owners and mortgagees to approve same, which did not occur with respect to the subject loan; (ii) contained fabricated projects to justify the loan, as evidenced by, among other things, the fact that some of the projects were already financed by a prior assessment and/or by the Association's Operating Budget; and (iii) contained a Financial Statement from 2021 that was not accurate;

31. First, my counsel advises that neither I, nor Sherman, can tortiously interfere with such because I have a vested interest in the Association taking out the loan; *to wit*, special assessments will be imposed on me if the loan is taken out. *Horizons Rehabilitation, Inc. v. Healthcare and Retirement Corp.*, 810 So.2d 958, 94 (5th DCA 2002); *see also*, *Perez v. Riveiro*, 534 So.2d 914, 916 (3rd DCA 1988); *Ethyl Corp.*, 386 So.2d 1220, 1224 (3rd DCA 1980); *see also*, *Peninsula Fed. Sav. & Loan Assoc. v. DKH Properties, Ltd.*, 616 So.2d 1070, 1073 (3rd DCA 1993).

32. Second, the information set forth in the email was accurate.

33. It is abundantly clear that the meritless Complaint is the culmination of a heinous plot to destroy Sherman, and I, by preventing us from exercising protected speech to protect the Board from suffering the consequences of its severe misconduct.

34. Respectfully, the Court should not countenance such reprehensible behavior, and the Complaint should be dismissed, with prejudice, with Sherman, and I, receiving treble damages, and our attorneys' fees, and costs.

THIS CONCLUDES THE AFFIDAVIT.

_____
PAVEL MOREFF

SWORN TO and subscribed before me this __6__ day of April, 2023, by PAVEL MOREFF who ___ is personally known to me or who _✓_ provided _Drivers licence_ as identification.

_____
NOTARY PUBLIC

(Seal)    CAROLINA NATALIA PERALES
          Notary Public - State of Florida
          Commission # HH 069155
          My Comm. Expires Dec 25, 2024
          Bonded through National Notary Assn.